We have two cases on the docket this morning, Wednesday, March 23rd. The first one is number 21-1830 Frain v. PA State Police and Pike County District Attorney's Office. And we're happy to let counsel for FLEs argue in whichever order they prefer. So, Mr. Parkins, is it? Yes, Your Honor. You may proceed whenever you're ready. Take your time. Thank you. Good morning, Your Honor, and may it please the Court. My name is Kurt Parkins. I represent the appellants, Eugene and Deborah Frain, in this matter. Before I get to the meat of my argument, I'd just like to briefly address two issues that were raised. Are you reserving any time for rebuttal? Five minutes, please. Five minutes. Okay. I'd just like to briefly address two issues that were raised by the State Police appellees for the first time on appeal, the first of which is the Eleventh Amendment immunity. And their point, to some degree, is well taken on any claims of monetary damages. But to the extent that all we're seeking from the State Police defendants is injunctive relief, and Eleventh Amendment immunity would not be appropriate. And I think if that were raised at the lower level, the appropriate remedy would have been to allow an amendment to substitute an individual under Grayson v. Mayview State Hospital. The other issue that they've raised now for the first time on appeal is an issue of collateral estoppel, that the issues here were decided by the Pike County Court of Common Pleas. And with all due respect to that argument, it's misplaced. The issue before the Court of Common Pleas in Pike County was whether the return of this property was required under Pennsylvania Rule of Criminal Procedure 588. And it's very different than the civil rights issues that are present before this court and that were present before the district court. They're not identical issues. And furthermore, to the extent that they claim some of our arguments we made preclude us from making them here, there's no indication of what arguments the court in Pike County relied on. If you look in the supplemental appendix filed by the defendant's appellees at page one, it was a one-sentence order without an analysis that didn't address what argument or grounds the court was relying on. So just if I'm capturing where you are, what I hear you saying on the 11th Amendment is that you understand that, I don't want to put words in your mouth, but it feels like a concession to me to the extent that there's a seeking of monetary damages, but you're saying we want a return of property too. And we think that the return of property kind of survives that state sovereign immunity 11th Amendment angle, but your 11th Amendment claim is no longer for monetary damages. If I captured where you are? Yes. But in your complaint, it was for monetary damages. You would just like leave to amend. I believe there was potentially a claim for monetary damages against, if there were individual officers that were identified down the road, or potentially against the Pike County defendants, but not against the state. But you didn't plead an injunctive relief claim against the Pennsylvania State Police, against the state. We asked for the return of property, which I believe would be the injunctive relief that we were seeking. That was in your prayer for relief? Yes. And so moving on to the heart of the issues here, Your Honors, this is a matter that involves the indefinite taking of private citizens' property by the government. Could we start with just clarifying some facts here? Sure. So were all of the Frames guns taken? Every one. Okay. How many of them were .308 caliber? None. Okay. Was there ever any allegation that any of these other weapons was involved in one of the crimes, displayed in one of the crimes, ever notified of any of that? No. And was there ever a warrant or other document received that specified any of these other ones? No. But you never challenged on Fourth Amendment grounds in state court that this was beyond the warrant or anything like that? Well, I think, Judge, that was not raised. We did raise the Fourth Amendment here. And you raised it in the federal district court, but you haven't appealed or preserved that claim here. Correct. I believe in my review of the case law that the Fourth Amendment arguments would not apply there. And, frankly, you know, I think that would have had to have been brought under statute within two years of the actual search of the house. Do you concede that the warrant would have immunized appellees from any liability during the trial and the direct appeal? Since you didn't challenge whether this was within the warrant or not, that they don't have any liability for the period of the pendency of the criminal case. You're just saying now you want it going forward after the criminal case. Correct. Let me just follow up on that. Judge Bebas just asked about the pendency of the criminal case. Were any of these guns that were seized admitted into evidence or offered into evidence in the criminal case? No. And so if none of them were offered or admitted into evidence in the criminal case, then why do you concede immunity after the criminal case closed and went on appeal? Because appellate issues are typically limited to those that were raised below. And after there was a judgment and after they weren't offered or admitted into evidence, then it seems that you can't really claim that there would be a need for those weapons on appeal in quite the same way. I suppose there could always be a remand or a vacate and they could come around again.  They might be needed for later events after the appeal, but not for the appeal. So why doesn't immunity end as soon as the trial court proceeding ends without the admission of these weapons? Well, I think it has, and that's why we're seeking the return of them now. Because I think until the trial happens, obviously it's a question of reasonableness. Maybe the commonwealth doesn't know what they're going to use as evidence.  But the trial has occurred and they didn't use any of the guns. They weren't evidenced. They're not contraband. They were lawfully owned. So our position is the government has no good faith basis to continue to hold these weapons and the other property that was taken. I just want to understand exactly what your colloquy was then. Because if I'm following you, what you're saying is at some point in this process after the deprivation or loss, taking whatever you want to call it of the firearms, you agree that there would have been an unsuccessful – there would have been no ability to successfully challenge the government's actions. But that's different than saying, well, I can see that they would be immune from it. I understand that you're saying, well, we wouldn't have prevailed at certain points and so fine. It's of no legal moment. But I think that's different than saying they're immunized. Well, I think – and I understand your honest position. And I think I agree with that in that they weren't immunized. But I think at that point in the proceeding, you wouldn't have had a successful claim to get them back. Have your clients purchased any firearms or weapons since 2014? I believe they have purchased at least – I know of one. I don't know how many or to the extent that they purchased. I honestly don't know that information. And that's not – is that in the factual record anywhere? No, Your Honor, because this was just at the 12B6 level. So we didn't conduct any discovery or get to that point in the case. And I think that's really what sets this case apart in regards to the Second Amendment jurisprudence from all the cases that are really cited. This case is unique in that I think every case that was cited by both us and by the appellees involved the taking of a single firearm or a very limited number of firearms. And the answer is you don't have a right to that specific firearm. You can go get a new one. But in this case, what's unusual here is that Heller was about an outright ban. Most – all the cases I'm aware of involved laws, bans, but this is not a legislative action. This is executive action. Could fit within the words of the Second Amendment, but would you agree this case doesn't involve a ban or anything that prevents your clients from getting more weapons? Do you? I agree. And were these weapons – by the way, were they – did your clients have all the necessary permits or licenses to the extent you're aware? They were all lawfully owned, registered, and I believe that my client did have a concealed carry permit if he did. But they were all taken from the home where they were lawfully possessed and utilized. And I understand the case law as – So your clients, to the best of your knowledge, don't have felony convictions or anything like that? None. I – to my knowledge, neither of my clients have a single conviction in their entire lives. Essentially what's happening in this case, Your Honor, is troubling. I understand the facts underlying, you know, what happened here and the crime that was committed by their son were heinous and exceptionally egregious. But what the government is doing here – But when the government came in and their son was still on the loose, are you challenging or seeking damages at all for the government's, you know, seizing the weapons while he's still on the loose? He might come back home. He might grab some of the guns, et cetera. Do you have any basis for challenging or seeking damages or anything for that period of time? No. Our issue is limited to the refusal to return post-trial. And when was the first demand made for return? It was made, I believe, within a year after the trial. Were the appeals still pending? The direct appeals were, but we waited to bring this case until the direct appeals were complete. Okay. So the demand was made while the direct appeals were pending, but no case was filed – no lawsuit was filed. Did you receive a formal refusal to that demand? The – there was initially, prior to my representation, a motion filed in the Monroe County Court of Common Pleas, and we found one in Pike, and they were both opposed and denied. Okay. Warrants historically – my understanding is they immunized officials who executed searches. Is there any reason why they would operate differently or not immunize officials who seized guns? I think maybe from the initial seizure, if it's reasonable under the warrant. But moving forward, I don't believe it would immunize someone from refusing to return non-property. So you're drawing a distinction between the initial seizure and the refusal to return, both for the Second Amendment claim and for the takings claim, right? Both, yes. So let me just follow up on Jadbiba's question. There's this notion that under the Fourth Amendment, warrants immunize officers, right? And so that's the Fourth Amendment, and that usually applies to the items protected by the Fourth Amendment – persons, papers, effects, homes – maybe I forget – but property. But that's where that is. Did guns get any special protection under the Second Amendment such that we don't just automatically engage in the Fourth Amendment's immunization, but instead we would do the balancing test that this court's formulated in Mazzarella to determine whether or not there's immunity when you go after guns? Or can we just go straight ahead and say, no, the immunity applies to anything that's seized pursuant to a warrant, and that that warrant is just, as Jadbiba says, classically immunizing? Or is there something else that the Second Amendment rides on top of that warrant immunization? Well, I think because the Second Amendment does provide additional rights beyond that of the Fourth, there is another analysis in that they won't necessarily be immune from a Second Amendment claim. Right, that's what I thought you were saying earlier, that the challenge might be legally futile because of how you see the interests being balanced, say, at the moment of seizure or closely thereafter. But I understood you saying that that's different than categorical legal immunity that surrounds the action under any circumstance. Correct. So you said that you're not conceptualizing this as one taking or one restriction on arms, but on several, and your challenge is not to the initial seizure. Your challenge is to the retention at some point. Maybe it's when you made the initial demand while it's on appeal. Maybe it's from the time that you filed the case. So when did the government commit the second taking or the infringement of the Second Amendment? How do we – we need to set a rule for future cases. When should that clock start? I think it begins when – in this case, I would give the government the benefit of the doubt of saying, by the time trial was over, you knew you weren't using the gun. By the end of the trial. But I think the point in time at which two things occur, you know that they are not – the government is aware they are not evidence and contraband and or contraband, and there's a request made for return, but that request is denied. I think that would be the time where the rights begin to be implicated. All right. You said – You don't see that there's any Second Amendment rights that exist at the moment of possession of the firearm forward? Because again, and I know I keep coming back to this, but I think there's two ways of conceiving of the argument. I just want to understand which one you're advocating. One is that there is a right, but it kicks in at a later stage. The other might be there is a right from the moment of acquisition of the firearm under the Second Amendment, and it is diminished only by the government's actions pursuant to its other constitutionally-granted authorities, and that's some sort of a balancing test. Now, early on, the challenge is going to be almost always unsuccessful because the government's interests are going to be so clear and things like that. That would diminish logically over time, and where that goes is the fact that – So is it the former argument or the latter? Well, I think the right exists throughout the entire pendency of the matter from the time they own the guns, they're seized, they're taken, et cetera. In the beginning, though, the taking of them, if you're looking at it under scrutiny, it may be reasonable during the pendency of the trial, but at some point it becomes unreasonable. So the Fifth Amendment taking is trumped by the reasonableness for warrant protection, whichever it is under the Fourth Amendment, for that period of time. You're just saying the period of time for which the warrant operates or the period of time for which it's reasonable you think ends at the conviction. Correct. So are you saying then, on that takings logic, every time that a case is over, the government has to empty its evidence locker? It can't hold on to something pending an appeal and retrial or anything like that? No, I think it can hold on to evidence, contraband, or something that could conceivably be evidence. There was another category of things that were forfeitable at the founding, instrumentalities. You know, something that had been the murder weapon, for example, or the gloves or something like that. You don't have a basis to dispute that those remain forfeitable and someone doesn't have a right to get the murder weapon back or the gloves, the other things that facilitated the crime. Absolutely. And they all belong to the culprit in this case. None of those belong to my client. So what you're saying is, look, if you admit it at trial, you have to keep it on appeal. If you don't admit it at trial, then you don't get to keep it any longer. And maybe to put it in the parlance of the Fifth Amendment, the public use expires at that point in time. And if the public use expires, then it's a taking that has to be returned. The flip side, though, is what about when does the Fifth Amendment's just compensation kick in? Because what if it is a taking for public use? Is there some right of compensation, just compensation, that kicks in later? I don't believe that there would be any right of compensation if it were evidence or potentially evidence. Can you cite any case holding that a taking or a Second Amendment violation happened at some time after an initial lawful seizure? This is really an unusual case. Sure. And I don't believe that there is a case on point in this circuit. But if you look at, as cited in our brief, denults out of the First Circuit, they specifically do make that holding, and they rely on cases also cited in the brief from the Second, Sixth, and Seventh, I believe, circuits. So there is case law from other circuits where that was held. Where a taking happened later. Correct. Where they find that there are two issues, the initial seizure and becoming a taking or a different seizure when there's a refusal to return. Okay. And that's not too different than prolonged detention of an individual upon a stop. We just say you've got a reasonable time to investigate what you might think would be evidence of crime. And then when you go too long with that, then under the Fourth Amendment, the Fourth Amendment protection expires. And in essence, what you're saying is we've got something like that expiration going on with the seizure of property. I agree. Exactly. I think it's a balancing test moving through. At some point, the unreasonableness exceeds the reasonableness when there's no longer a reason to hold. Thank you. I have a couple more questions. You can stay on our time on this. One thing is, I worry that this would create a real headache for prosecution, at least if we said if you don't put every last thing in the evidence locker in at the trial, you're not going to have the flexibility if on the retrial the defense adapts its defense, et cetera. I mean, would they have to go get another warrant in order to hang on to it because they want it for evidence in the second trial? I mean, I don't know that you need that in this case to win, but I wonder about what you would say if your friends on the other side say this would be a massive, unprecedented holding to make prosecutors use it or lose it right away. Well, I think it would be a case-by-case basis. I think you have cases where the government may have a mound of evidence and they choose to use some and not the rest. But I think you differentiate in that in two ways. You have stuff which is or can be evidence, and then you have something which is not no matter what theory the defense brings going to be evidence. These guns were guns owned by this person's parents lawfully in their home. The child did not live with them. They were in no part connected with the crime. He used his own firearm, not the parent's firearm. He used his own tools and completely unconnected from them. These were something that no matter what the defense is in the case, were they ever going to be evidence? But just in terms of what issue is before us, your clients didn't make the request for return until after the appeal had been completed. Is that right? I believe there was an initial request, but no, an informal request, not through counsel. Is there any evidence in the record of a demand and a refusal before the conclusion of the appeals? Not at this time because we didn't get to discovery. So one level, we have this interesting question about how long you have to keep things in the evidence locker. At another level, if you didn't make the request until, if your clients didn't make the request until after the appeal had wrapped up, that might be the more focused question that we can look at without having to worry about, as Judge Biva says, use it or lose it. Sure. A couple more questions. One, does the Second Amendment protect a person's right to own a particular gun or a set of particular guns, or is it just a right to have weapons generally? How much does it matter that your clients can go out and buy more guns? You know, I think that there's, I don't believe that the Third Circuit has spoken specifically on this issue. There's some district court cases out of the circuit and some other circuits where they say it's not a right to a particular firearm. But I think you draw a distinction, whereas the answer in those cases, the court has said, if one firearm is seized, you can go out and get another firearm, right? It is what it is. I don't understand that at all. Why is that is what it is? Well, I think the courts are saying, and in those cases, there's a couple things that are differentiable about those cases. First of all, they're saying you can go out and buy, you know, another one, we've seized one gun. Here, where we've seized someone's entire set of guns, here it's in excess of 46 guns. I thought the point about no specific firearm originates from something somewhat different. I thought it originates kind of in the context of regulation. People can't own this type of gun, right? So you don't have a right to own a certain type of gun, a high-magazine gun or something like that. And so then we have this thing of, okay, there's not a specific right to own that. But that's a very, very different question than saying, I have guns in my house, and now I don't have a specific right to any of those. It's a very different thing in terms of what we might be able to regulate as far as specific weapons versus begin to seize and take specific weapons. So when we want to talk about is there a right to a specific weapon, I get that the case laws kind of begin to fan out. But I thought kind of the whole point of that was at the beforehand regulatory stage, not the after the fact. Am I missing something there, or is it really just always no right to a specific weapon, even if it's in your house and even if you've had it? And I think that that point is well taken. And one of the things that I note in the brief is the special nature of the home and that the rights in the Bill of Rights are, as Justice Scalia noted and Heller has noted and the progeny, is that the rights are at their apex in the home. And the fact that this was somebody's entire collection of weapons in their home, possessed lawfully, I think gives them protection. So in the cases where, you know, cops stop a guy on the street, he's got a concealed weapon, he's arrested for carrying a firearm without a license. The courts have said, well, they've said, I want that firearm back. The court said, you don't have a right to that particular firearm. So they use that language. But what's different about those cases is that it also was utilized in a crime, you should have been carrying it, and it was evidence. And none of those are true in this case. I mean, Heller preserves longstanding prohibitions on those kinds of restrictions. But, again, I think Judge Phipps's point that the kinds of licensing regimes that have been countless under the Second Amendment deal with the prospective acquisition and time and place and use of a particular firearm, not what I thought was at issue here, which is the loss of a particular firearm that had already been acquired. And I think there's the issue of, I go back to the issue of what's reasonable. If the government seizes a single firearm as evidence in a case, it's reasonable for someone to go procure another one if they can do that legally. When they take an entire collection of guns, in excess of 46 of them, it's not reasonable to say, well, you can go out and spend $100,000 on a new collection of weapons. One more question for me. I think one of the authorities that helps your friends on the other side is Venice v. Michigan. You say, well, we're in takings here, but Venice was a forfeiture case. And then it said the government need not compensate an owner for property which it has already lawfully acquired. So is that going to be a bar since if there's a basis for lawfully acquiring it, does that mean that then we're immunized from takings liability? Well, I don't believe so. I think, first of all, I think in Venice the item was actually evidence, first of all. And I think that's the biggest difference between this case and any of the cases. Didn't title transfer in Venice too? Am I remembering right? Didn't title transfer in Venice? They went and they took the car and then they sold the car off, but the selling of the car wasn't sufficient to cover the administrative expenses. There was no money left over. So it's not like they were just keeping it forever for evidence. They sold it at the end. I believe, Judge, it was joint-owned between husband and wife. The husband was the defendant and the wife sought it back. So there was actually, I believe, a conviction of the defendant. It was actually used in the commission of a crime, and so it was forfeited. None of those things are issued here. So I think Venice is highly distinguishable. Nor is there a constitutional right to regulate automobiles, but I'm aware of those. Can you remind me, too, what happened at the 558A hearing in the Court of Common Pleas? I know that it's mentioned in the record, but I'm not sure exactly what went on there and what the process was. There was a – I don't believe there was any testimony taken or evidence put on it. It was a brief argument before the court. Do you recall what arguments were raised and how that – I believe I raised state procedural arguments. I did raise some of the arguments I'm raising today. But as I had indicated, there's no indication from the court's one-sentence order what the basis was to the opinion. Let me just ask a question about closure. If your clients receive all of their guns back, is this moot now, or is there something that would linger after that? I think there may be. Are you exerting monetary claims under some other theory that – because you disavowed those, at least with respect to the Pennsylvania State Police. And so I guess what I'm saying is to the extent this is about injunctive relief, to the extent this is mostly about wanting the guns back, get the guns back. Has anyone left your case? I mean, it feels kind of – getting close to moot at that point in time. And it very well may be. I know personally from my client's perspective, all they wanted is their property back, and that's really what they're seeking. The only issue that may linger is perhaps a claim for attorneys to use the work it took to get them back or something of that nature. But I think in terms of compensatory damage or other damages, I don't think there would be a claim. So what was your answer to the Rule 558 hearing? We just don't have – we don't have a transcript. We don't have a basis for knowing what happened there? Correct. It was a brief oral argument. There was nothing. There was no evidentiary record made. I don't believe there was testimony. We submitted some exhibits that were attached to the motion for return of property. I don't believe there was an evidentiary record. I believe it was argument. All right. We'll get you back up on the line. Thank you. Which – are you Mr. Kirkpatrick? Mr. McMahon.  Go ahead. Good morning. May it please the Court. My name is David McMahon and I represent appellees, defendants in the underlying matter, Pike County's District Attorney, Ray Tonkin. We did flip the order from what's on your listing. I'm going to address a couple of the questions that the Court raised. Okay. One question. Let's start with the preliminary one appellant made. I mean, we'll ask the 11th Amendment question to your friend because that's for Mr. Kirkpatrick. But what do you say to the preliminary point that the appellant made that we can't have collateral estoppel here? There was a one-sentence order. We don't have an evidentiary ruling. We don't know what was resolved. Why should we even be – why should collateral estoppel even be in the picture? So, I'll address it briefly. I believe my colleague was prepared to discuss it. Oh, I'm sorry. Let's just leave it for your colleague. Let me just address briefly because it does go to one of the claims. There's three claims here. Procedural due process, takings, and Second Amendment. Okay. The procedural due process, and I believe the law is clear, is that if there is a process in place, you don't have a constitutional claim. 588 is that process. Okay. So, it goes to the procedural due process point, but you're not claiming this goes to the takings or Second Amendment point? I think it goes to the procedural due process. It's case law that we cite where courts have said that the process available under 588 is constitutional and appropriate. And I do want to let you get to this supplement question, but I also want to ask you those same clarifying facts. We don't have a record, no discovery yet, but is your understanding that appellants have never been charged with a crime relating to these guys? That is correct. Okay. And they've never been arrested related to them? That's correct. Has any of the guns seized .308, what, rifles I think were involved in it? I don't know the inventory of what was seized. Was there any basis for believing that any of the guns seized was involved in the crime? They were seized pursuant to a warrant. So, when we go back to the whole process. The warrant says a .308. Now, they didn't challenge the warrant. Maybe they could have. But was there any basis for believing that these are not mere evidence that they were actually instrumentalities of the crime? That they shot or were displayed or otherwise used in the crime? I do not know the answers to that question. Has your office ever alleged that in any pleadings or in court? Again, I'm not involved in the underlying criminal matter, so I can't answer that. But you are not defending these seizures on any of those bases. You've not taken that position. You have no record evidence. You're not saying that that is a basis to defend the seizure and retention. I'm taking a position in this case in that unless and until the criminal matter is fully concluded, there's still a PCRA hearing pending. That's not really a criminal matter, is it? Well, it's still part of the criminal matter. It's civil. It's against the warden. It's not the people of the Commonwealth of Pennsylvania. It implicates some of the same issues, but it's a civil action for release from custody. But I think going to one of the questions that the court had earlier is at what point does the retention of the weapons become a taking? I think the bright line, and I don't think any case has talked about it, would be when all the related matters to the criminal matter… One last factual question. Sure. I'm sorry. I just want to make sure I wrap this up. Are you aware of any caliber of bullet involved, covered, tested, other than a .308 rifle bullet in the eye lock? Again, I'm not familiar with the underlying… But you are not basing any defense of the seizures and the tensions here based on an allegation you've made anywhere that these weapons were involved? I am not, no. Okay. Sorry. I'm Judge Phipps. No. Okay. So let me jump back into, I guess, what I prepared to speak about. One of the questions, I think, that was posed to my colleague was, you know, what's the harm in just giving back things at this point that weren't introduced in the evidence? And I think Your Honor had indicated that that kind of is a slippery slope, right? You're creating, you're putting a burden on the prosecutor to immediately return anything that wasn't admitted into evidence. Doesn't the Constitution already put that burden on government? I mean, I guess, you know, I'm sure you're going to get to some of the secondment issues here, but I do think we need to keep that in sharp focus, right? Sure. I mean, we're not talking about cars. We're not talking about things that are not regulated by the Constitution. So why does your rule apply even with that specifically? Because I believe that the rule is in the case law. We talked about it. Is there, is that a single case that either side has cited that said that you have a Second Amendment right to the particular guns that were seized as part of the criminal prosecution? The case law is not a case by either way. And you are not, you've never alleged that these guns don't belong to appellants, correct? Correct. And you've never alleged that they were involved in the, that the appellants were involved in the crime or that these guns specifically were involved in the crime? Correct. All right. So, I mean, in many criminal cases, it's going to be the defendant, right, who's charged. And it's going to be the weapon that's involved. So we're not concerned about that here. This is a different kind of thing. Have you given any basis for how you would use these in evidence at a retrial? What's the theory on which you need them for a retrial? Well, I think as my colleague had mentioned, unless and until the criminal matter is fully concluded, we don't know what we're going to need them for. That's really a strong, strong, strong notion of what the government can do in light of individual ownership rights, right? This isn't contraband, right? Contraband, I guess, there's no title to contraband. There's no valid title to contraband. So if this is a drug case, all of that can be in the evidence locker forever and always. If it's admitted in the evidence, maybe a little longer. But, I mean, the real problem with your case is that your defense is that the Friends had ownership interests in this, and they weren't ever used in the underlying criminal case. And now what you're saying is on the contingency that there would be a PCRA claim, because there was a time when there wasn't one, so you're holding it when there wasn't an active case. But on the contingency that there would be one, we want to maintain, without paying them any compensation, their property, and then we want to maintain it continuously until that process, that civil case, expires. And it seems that, I mean, there could be no stronger argument, I guess, that you could make, and then you get to keep them indefinitely forever. But this is, I guess, the second strongest argument you can make in terms of how much the government can take without a whiff of compensation ever going back to the people. Well, the argument is twofold. One, there's a vehicle under Pension Anewal 588 that can be availed, and they did avail. And I'll let... 588 really says nothing substantive about what the substantive standard is here. It's very terse. It helps with procedural due process, maybe. Look, it probably is good enough for you on procedural due process, all right? But I want to get at this. Let's say we believe that the government has to justify the continued retention, so there's a burden on you. That creates a problem for you because you're not articulating anything about why specifically, how you're going to need it, how you might use it, what the theory of the prosecution is as to how this would help the prosecution in its case in chief, or to rebut something. Can you give us any, articulate a couple sentences, something fact-specific about why you need these guns? Because I am not involved in the criminal matter. I think the concern would be... All right. Let's give you a week to submit a supplemental letter brief after consulting with the counsel as to what any... Just here's how we might, in good faith, represent that we have a reasonable prospect of using these weapons at a retrial. Okay? I want a theory of your best justification for holding on to them within seven days of today. Can I just ask a question that maybe you're addressing that, maybe you don't? But could you get a warrant for these guns today? Assume that you didn't have them. I have the same question. What's your probable cause here for seizing them if we make you do it again now? I don't think we could re-seize them in a new manner. Let's just say that you gave them back, and now you said, you know what, we might need those. We purged the evidence a little too soon. Now we realize that there's a PCRA. Right. Could you get a warrant for that? I would think not, but I don't know. I would think not. I would concede that. So can I hit the Second Amendment briefly? Yeah. Where the supplemental briefing was asked for. And there is not a single case that either side has cited that says that there's a Second Amendment, Second Amendment. Right. So the Commonwealth's position is there's no Second Amendment right here. We don't need to get into the balancing factors. We don't need to apply marzarella. There's just no Second Amendment. No, and that would be the – there are two cases from the Eighth Circuit we cite, one from the Seventh Circuit, one from the Sixth Circuit, eight district court cases including three from the Eastern District that says, as we've talked to previously, you don't have a Second Amendment right to this item. I do think, and there is a case that cited, I believe it's one of the Eighth Circuit cases, that counsel mentioned is when the criminal matter, it was the Latham case, I believe. When the criminal matter is fully concluded, in fact, in that case, there was no charges even brought in the first instance. In that case, the additional fact, which is vastly different here, is when charges were not brought, was concluded, the government at that point gave the weapons to other law enforcement agencies. Here, factually, is once everything is concluded, the items would be returned. So it's not as though these are going to be converted to public use or kept indefinitely. So let me just ask this question. So is it your position that under the first prong of the Mazzarella framework that our circuit uses, that there has been no – that the ceasing of the weapons has burdened no Second Amendment right? Correct. If we disagreed with you and thought there was a burden, can you justify this seizure under intermediate scrutiny or strict scrutiny, depending on which we would apply? That would be, I believe, what you want the supplemental briefing on, Your Honor, is the reasoning why. We'll confer afterwards and we'll issue an order once we figure out the wording of what we want. But we'll come back to you about that. Okay. So what is your position on the Mazzarella prong one? You can take all of a person's weapons and that doesn't burden a Second Amendment right because they can buy new ones? Yes. And I believe that's what the case law says, consistent. It's not what the Third Circuit has – we've never said that. But it's a different thing to say – I mean, will you at least go with me on this? It's a different thing to say you don't have a right to acquire a specific weapon, but it's a different thing to say that you don't have a right in a specific weapon that you have in your house as your possession. So you might have a right to acquire a high-magazine firearm just because you want it, right? That might be regulated. But once you own a weapon, you can say, no, we can take away the high-magazine firearm too. I thought we were taking those away under prong two of Mazzarella, though, not prong one, the balancing test. I think you can take them away if there's a process, and that's what happened in the underlying matter. They were taken. There's no Second Amendment right. So basically, there's no Second Amendment right independent of the procedure of the process. It's just you have a right to get the process here. Correct. Anything else? Anything else, Peter? No. Okay. Thank you very much. Mr. Kirkpatrick, I presume? Yes. May it please the Court, my name is Sean Kirkpatrick with the Pennsylvania Office of Attorney General. It looks like I only have five minutes to talk, but I'm sure I'll be on your own time. I am here representing the Pennsylvania State Police, and let's get to the jurisdictional issue first, and that is 11th Amendment immunity. Ex parte young fiction establishes that you cannot sue the state or an arm of the state for injunctive or damages. You can sue an individual in their official capacity for injunctive and in their individual capacity for damages, and that comes through Will versus Michigan State Police, which held that a state or an entity of the state, such as a state police, is not a person under 1983. So we have, because my friends and the Freem's have sued the Pennsylvania State Police itself, we have immunity regardless of what their relief claim is. Should they be given leave to amend to say, okay, maybe that's correct, but since we want injunctive relief and not damages, we'd like an opportunity to sue in a way that is not 11th Amendment protected, or is your position that there's no one that they could sue for injunctive relief within the Pennsylvania State Police that wouldn't be shielded from 11th Amendment? Well, so this is on appeal of a motion to dismiss, and so the question with regard to my client is, was dismissal proper, frankly, under any theory? And the Mid-Circuit says when dismissal happens, unless leave to amend would be futile, an opportunity to amend should be permitted, typically. And so I guess my question is, if that rule applies, and it might take a liberal application of that rule, but if that rule applies, then is it your position that any amendment against any individual officer within the Pennsylvania State Police would be futile, or is your position that that could happen, but just that leave to amend shouldn't take place? So I represent the Pennsylvania State Police. I'm not here on behalf of any individual entities. Amending the complaints against the State Police would be futile. Individuals that they may amend a complaint in the future to sue might not be futile. I can't answer that hypothetical unless I know the allegations, because, again, we go into Ex Parte Young. There has to actually be personal involvement. And so I don't want to say that there's no one ever possible that they could sue, but I just don't represent them here. Let's talk about collateral estoppel. We have a one-sentence order. We have no transcript. We have no basis for knowing what was resolved below. Does that resolve anything except for the procedural due process claim? Yes, I believe it does, Your Honor. How? So the reason there is no opinion is because the Freens never appealed the Rule 588 action. Had they done that, the court would have issued a 1925A opinion explaining all of the reasonings behind the denial. It would have gone to the Superior Court. The Superior Court could have reviewed it. It could have appealed to the Pennsylvania Supreme Court. But there's no exhaustion requirement. No exhaustion requirement under Section 1983. We're not making an exhaustion requirement. But let's say now they're raising different claims. They're raising a takings claim. They're raising a Second Amendment claim. How are those civil rights claims precluded by a one-sentence order that they didn't appeal? We are not making the argument that a claim is necessarily precluded. Okay, but are there issues that are precluded or facts that are estopped? Yes. What? The fact that would be estopped would be the necessity for the retention of this evidence because of the future criminal. The necessity was not litigated under the Second Amendment or under the takings clause. So the question, the issue that would be precluded, Your Honor, would be is this necessary for a potential future trial? And that has relevancy. How do we know that that was resolved? How do we know that it wasn't rejected on procedural grounds or something else from a one-sentence order where we have no transcript? So to have a holding, that would say if you go to a state court and you apply for something, you try to resolve an issue, but you get denied, don't appeal because if you appeal, then the court is going to issue an order and that might hurt you in a future federal case I think would be very problematic. I think the import of this is we are not in the best position to determine what is needed for a future criminal trial because, well, the criminal court is in that best position because they saw the evidence, they heard the testimony, and not just the criminal court at the trial level, but the state criminal process, the superior court who can look at this, and the Pennsylvania Supreme Court. Can I just ask you a question about kind of Pennsylvania law? I understand from what you're saying that if they had appealed, then that would have prompted an opinion. And so your argument is one of I think just a lot of functionality concerns going to this. There could be a possibility for gamesmanship if you don't want to get collateral estoppel, you don't appeal. But does anything about Pennsylvania law prevent an opinion being written without an appeal? I thought it just required that upon appeal an opinion get authored. So it seems that if it was optional to write the opinion and that option was not exercised, that those concerns would be evaluated in that context. Jurists have a lot of power over their own docket. I do not doubt that a trial judge can, should he or she choose to write an opinion without going through 1925. I know you don't represent Pike County DA, but do you have any further factual information or reason to disagree with or amplify what Mr. McMahon said about the facts, the appellant's lack of involvement, the guns, no information about their involvement in the offense here? Or you have no additional information about any of these? So two points, which probably will not provide you the additional information you're seeking. But the first point is we are the custodians. It is in our evidence locker. We are maintaining the firearms per the request of the district attorney. The propriety of the initial seizure is not before this court. It has been abandoned. The retention of them under the Fifth Amendment, and I do believe Bennis v. Michigan, when it talks about property is seized pursuant to criminal laws is not taking. And the reasoning behind that, as I understand it, is that when property is taken, and in that case forfeited, under a criminal process, it's not for public use. And this court, albeit in unpublished decisions in McKenna v. Portman and Wilson v. Altman, sort of understands that distinction. So what protects a property owner of having their property continuously maintained is the Fourteenth Amendment procedural due process. As a custodian, do you have any information about how these guns could or would be used at a trial? I mean, Mr. McNamee wasn't ready to talk about that. Do you have any information about that? We did not prosecute it, Your Honor, no. I wouldn't think so. I'm just checking whether you wanted to add anything on that. And again, I guess that's the danger I see in having the district courts act as an appellate court over the decision of whether this is going to be used in a future criminal trial. It's sort of, there is a criminal process that goes to the states. The high court is ultimately the court of last resort, but to stick a district court sort of in the middle and say, well, you know, maybe these guns could be used, but these guns don't. I don't know that, are you really sticking anyone in the middle when none of it's admitted into evidence? I mean, the question here isn't offered or admitted into evidence. I mean, maybe if it's offered, you preserve it. But I mean, I get it if some of it's offered and rejected, and you could see that issue into evidence. You could see that playing out on appeal. You could see it playing out on appeal that it's admitted into evidence. But when prosecution doesn't even offer any of it, I mean, that doesn't seem like that hard a rule for a trial judge to say you're keeping stuff that you didn't offer. I'm going to let you keep keeping that in case something happens on appeal and we're back here in a few years doing a new trial. I mean, don't you think that the standard should be really simple? Could a new warrant issue as of that date? And if the new warrant couldn't issue as of that date, just return it. And trial judges issue warrants all the time. That's right in their bailiwick. Trial judges consider the evidence to be used in criminal prosecutions under the Fourth Amendment all the time. I mean, most motions to suppress, I would imagine, require pretty much the same balancing interest. The government didn't have a right to do what it did here, and that evidence should not be allowed into the trial. District courts, at least since the founding, have been able to handle that balancing. So why is it so different? Because, Your Honor, if I can answer your question first and then come back, I apologize. Sure. Because, Your Honor, it's not sort of, you know, is there reasonable cause to seize or was there probable cause to make a seizure of property or person? This is X number of week trial. What are all of the defenses? What were all of the arguments on the prosecution? And ultimately, what was admitted in the evidence? And to have that full scope or understanding of what a criminal trial was, and then also, in the future, should this be kicked back for any reason, what evidence might be needed. And it's not just a matter of the process of having to go back and seize it. Obviously, once it's out of the evidence locker, any kind of forensics is destroyed, obviously. But it could disappear. It could be gone. It could be destroyed. And that's, well, how about a procedure that says the warrant, the initial warrant, protects you through, say, the end of the appeals. They make a demand. You go back and get another warrant. And if you don't have probable cause at that point, then you don't get to retain it. But if you do, then a magistrate authorizes. They can move to quash. They can litigate whether you still need it. So, and I think that goes to perhaps. Yeah, my point was not even at the end of appeal. But if a request came in at the end of trial for return of this, I mean, couldn't a district judge just make a determination as to whether it would be probable cause to issue a new warrant for it? And if it wasn't admitted in the evidence, that's the second twist on the hypo, then it strikes me that it would be really, really hard to make a case for probable cause to continue keeping weapons or any property that wasn't offered or admitted in the evidence. So that rule, if adopted, would encourage DAs to put everything into evidence. They could try. And not all of it would come in, no. But that, obviously, if it is in evidence. It might not encourage that. It might encourage them to negotiate with the other side and say, are you going to make a request later for return of this? But, I mean, if the request for return is reasonable, I mean, trial judges make cumulative. Trial judges won't admit things unless they're relevant. And if they're cumulative, that won't come in. And so if it's contraband, the rule wouldn't apply to contraband, right, because there's no title. There's no claim of that. Instrumentalities are forfeitable, too, murder weapons and things. Yeah, and we're not talking about forfeitable. We're talking about evidence that someone else has title to. So the initial seizure, and again, is not at issue here. So if the initial seizure was proper, if there was probable cause to initially seize this property, again, would this be a Fourth Amendment with the second warrants? Would this be a Fifth Amendment or a 14th? It would be an expiration of the Fourth Amendment that would then trigger the Fifth Amendment's just compensation in public use concerns. Well, I think the problem with that, Your Honor, would be now you are, so the Fourth Amendment seizure would end at the end of appeals under your rule. Under Judge Bibas's rule, not under my, under his rule. And then you would, I suppose, if there's a request, you start a Fifth Amendment, so that would convert the criminal question. And if it's denied, then you would have to justify it as, you might be able to say it's still public use for reasons less than probable cause, but then you would incur just compensation responsibility to do so. But, Your Honor, the seizure of the evidence at the very beginning was never public use. But the whole point is, Venice was an acquisition case. It was a case about the power to acquire. It was not a case about the power to retain. And the Fourth Amendment involves two things. It involves both acquisition and retention. And so it's really, really a strong and emboldened reading of Venice to say Venice isn't just an acquisition case. It's an acquisition and retain case. And I think that how, and look, there's only three sentences that matter in Venice. We can read them a lot. It's not a lot to go on, but its focus was acquisition. But if the government can acquire permanently property and that is not a taking, it seems odd to me that a property that ultimately will be returned is not. Well, Venice says, I'm paraphrasing, through a legitimate exercise of government authority. Eminent domain is a legitimate exercise of government authority that allows a permanent taking. The Fourth Amendment is a legitimate exercise of government authority that does not authorize a permanent taking. It authorizes for a reasonable period of time, typically. And so I guess what I'm positing to you is that Venice would say, yes, you can take it as long as there's a legitimate government basis for doing so. In the Fourth Amendment, that legitimate government basis expires at some point in time. In the Fifth Amendment, eminent domain context, it doesn't expire. But Venice would contemplate that you can only keep it for as long as there's a legitimate government interest, and the Fourth Amendment should expire. Okay. Do you get where I am on this? I do now. Thank you, Your Honor. So, again, we get into a question as to whether this has – whether it is proper to retain this pursuant during the criminal proceedings, which is a decision that was looked at and made by the state trial courts. And you would ask then that the district courts to sort of, again, sit over that trial court and say, well, you thought it maybe was necessary for the Rule 588 proceeding, but you're wrong. It's not going to be necessary. It's now an unlawful taking. Give it back. With regard to the Second Amendment, I just want to point out – somebody just said – you said it's not unlawful. Give it back. I'm not sure that the only option is give it back, right? I mean, the other option might be, you know, work on some form of just compensation. If you want to keep something for an extended, extended, extended period of time, and you can justify it loosely on public use grounds, and it's someone else's property, you might owe them compensation until the public use expires. And so I guess what I'm saying is if a state does want to keep it through the entire PCRA proceeding, maybe that can be justified on public use grounds. I don't think a new warrant could issue on those grounds. But if you want to keep it, you don't get to keep it for free anymore. Well, sure. So the relief of return might not be available, but the other relief of compensation – and that's why I asked your friend on the other side, did you just want return or do you want some sort of compensation, monetary compensation, for the extended taking? And so I guess I just want to stop you because what do you think about the notion that, okay, we could keep it for the duration of the PCRA, but we'd have to pay some sort of, you know, losing their arms for years at a time? If this court finds that the Fifth Amendment analysis begins at some point, then obviously aspects of just compensation would be a part of it. I suppose then the question becomes, again, where is that rule? When does the Fourth Amendment end and the Fifth begin? Is it at the end of trial? Is it at the end of direct appeal? Is it at the end of PCRA? At what point does it become a takings such, and the question might be, do they have to actually affirmatively request it back? You know, I think my confusion, and if I seem confused, I apologize, is that, again, I don't believe the cases have done this in the past. And so I think that we are venturing into interesting waters. It seems to me that the normal, the way the other circuit cases have decided this, not only Tenth Circuit and Federal Circuit, we cite the two cases from the Federal Circuit, but even the Second and Seventh Circuit in Shaw and Lee, the way they looked at it has always been procedural due process. We can't take anything from somebody unless we provide due process. And sometimes that requires pre-deprivation. Sometimes that's just fine for post-deprivation. But that has always been the analysis. It's fine, but the question is, might there be substantive rights from the Second Amendment or the Fifth Amendment that procedural due process is protecting? Normally procedural due process is sitting on top of some other right that it's trying to protect, a substantive right. Yes, Your Honor. So that gets us into the Second Amendment. And that is, again, sort of this rights to property and a rights to self-defense. Roger B. Knight is an Eighth Circuit case that said, quote, lawful seizure and retention of firearms does not violate the Second Amendment. Indeed, even the unlawful retention of specific firearms does not violate the Second Amendment because, as we argue in our brief, the Second Amendment does not create a property right. The founders were very good at creating property or protecting property. They did so in the Third Amendment. They did so in the Fourth Amendment. I don't know that they create property rights. I think the Constitution protects property rights. You're exactly right. If I said creates, I apologize. It protects property rights. And it understands how to do that. The way it does it, again, as we state in our brief, Samuel Adams, on behalf of the Massachusetts delegation, actually suggested a Second Amendment language that would have protected people's rights in their own firearms. But that wasn't what was adopted. All of the cases, and I read the Eighth Circuit case and Roger B. Knight, have said, no, this is the typical Second Amendment case is an attack on a regulation or a law, prohibiting access to or a gun club through zoning laws. I totally get that. That's the typical one. That's what we normally see. We see perspective regulation being on gun ownership or gun acquisition being challenged as a Second Amendment. That's normally what we see in the case law for Second Amendment. So it's no surprise to me that on that input, that factual input, we get cases that talk about the notion that there's no specific right to acquire a specific gun sometimes. But this case isn't about perspective regulation. So you said earlier, you said we haven't seen this in the case law. Well, one of the reasons we don't really see this in the case law is because there's far less cases that involve acquisition of lawfully acquired firearms as opposed to perspective regulation. And so it just strikes me as a little bit strange to try to apply the perspective regulation case law to the after-the-fact acquisition facts that we have here. So I would suggest, Your Honor, that the reason we haven't seen this in the last almost 250 years is because there is no property right under the Second Amendment to specific firearms. Or, alternatively, that governments respect the property right under the Second Amendment and haven't violated it. This is not... Second Amendment... I mean, if we want to make inferences, that Second Amendment wasn't incorporated against the states until very recently. That's another thing. Well, 14th Amendment. But, again, there is case law out there. It's Rogers v. Knight. It's Eighth Circuit case. But the reason... Okay, so the question then becomes, where does this Second Amendment right attach? I suppose it could attach at the second the guns were seized. And then you have to make an analysis each time a police officer seizes a firearm versus some other piece of property. You probably posited earlier that that's a really easy analysis. What it would do, however, is it would give pause. So an officer is arresting a suspect. They have a firearm. It has never been the law that they cannot... But officers have to make reasonable judgments all the time when they're arresting. They have to make an assessment as to whether there's probable cause, if there's a reasonable or takeable suspicion. They have to make all sorts of judgments as to seizure of persons. The only thought is, much like seizure of person is protected, is there something else that needs to be considered when it involves or not considered nearly as much or nearly as in depth for the Second Amendment purpose? So it would seem that the rule would essentially be, if it doesn't violate the Fourth Amendment, it doesn't violate the Second Amendment. But if it does violate the Fourth Amendment, it also violates the Second Amendment. I mean, the answer might be, yes, that is a coincidence. But if the source of right is different, then there would be two different streams that would protect the same thing. That happens. There are certain things that can be protected in multiple ways. The Free Exercise Clause protects certain religious activities that might otherwise be protected by another constitutional protection. It doesn't mean that we just collapse the analysis into one of those constitutional protections, but not the other. You have to do both. And a lot of times, if it's constitutional under one, it's constitutional on the other. But again, that creates a property right under the Second Amendment to say, your Second Amendment right is not infringed because we have taken away your ability to defend yourself, so much as we have taken away a piece of chattel. Why is it the same thing, though? I'm sort of curious at your distinction. If, hypothetically, an individual has lawfully acquired a firearm, the person is deprived of that firearm by government, what right do they still have to dissent? Well, they still have the ability to acquire other firearms. Where else in constitutional theory does that premise hold? Because I'm not aware that we normally say, well, you can worship a different way, you can speak more, those papers were stolen from your home, but you can certainly go acquire more papers, there's plenty of books to read, on and on and on. It's an unusual claim that you seem to be making, that a constitutional right that is reflected in the Bill of Rights is not infringed because there's more of it that you can go acquire. So help me analogize this. So if an individual bludgeons another man with the Black's Law Dictionary, or a version of the Catcher in the Rye, the seizure of that as an instrumentality of the crime does not infringe or impugn the First Amendment. But we've already taken instrumentalities off the table, haven't we, in our conversation? So give me something non-instrumentality. Well, there is certainly a right for women to have access to reproductive care and abortions. That doesn't mean the government has to pay for it. There are lots of individuals who don't have a firearm who would like to protect themselves. There's no requirement that the government provide... All right, so the Bill of Rights, most of the rights in the Constitution are negative rights. The government doesn't have to do anything to help. But here the government did something affirmatively to interfere. And so now what? So if this is a hypothetical in which the government is going around and rounding up a specific type of weapon, the analysis has always been, and I would argue should remain, is access to that weapon protected by the Second Amendment. It has never been the fact that you have a piece of chattel that has been taken violates the Second Amendment. That is protected by the Fourth. It's protected by the Fourteenth Amendment. Okay. McDonald v. City of Chicago talked a lot about freedmen in the South who, you know, there were lots of restrictions on blacks' ability to own firearms, right? If the sheriff came along and took all the firearms that some black freedman had, would we say that because the law in the books allows you to buy more, that's not a Second Amendment violation? Even if there were a pattern of going and taking this from black people, but there's no policy that says you can't truck all the way to somewhere that will actually sell you another one? No, Your Honor, because the reason those were seized, because of who you are. You are a black man, and therefore, it is a policy or practice to take away your ability to defend yourself because of who you are. The only rights you have in firearms are those that exist in one of the other guarantees of the Constitution, right? So since that's an equal protection claim, or that then is the Fifth and Fourteenth, so it's fine, and then your other examples you have, say, the Fourth Amendment, but if you don't have those extra protections in the Second Amendment, what does the Second Amendment do then? No, I would disagree, Your Honor. I think that it does provide additional protection. You could have a situation in which an individual doesn't amount to equal protection, but there would still be Second Amendment. An example of that would be Drummond, I believe, where there is sort of this infringement. And this is a situation where a piece of property, a piece of chattel, a firearm, which your right to acquire and buy generally is absolutely protected. I don't know. I mean, you're reducing it to chattel. It's a subset of chattel. I don't know that the Second Amendment protects everything just because it's chattel. It protects it because it's a firearm and entitled to protection. If it's a firearm that's not entitled to protection, and Heller says not all of them are, then maybe that's a different event, that you're seizing contraband or something like that. But when we're talking about lawfully owned weapon, and the Second Amendment says to keep and bear arms, do you think that there's any burden on taking away a lawfully owned weapon under the Second Amendment? So to the extent that I suggested that Second Amendment applies to all chattel, I misspoke. But a firearm is chattel. It is a piece of property. It isn't a person. Assuming it's lawful. Assuming it's not contraband because you can't have a title interest in contraband. So that's why we have to assume it's lawful. But I want you to answer my question. And the question was whether the government taking away a lawfully owned firearm, in your view, burdens a Second Amendment right? In some circumstances, yes. In the circumstances of a valid search warrant, no. How long does a search warrant remain valid for? Until all the way through the PCRA? But then is there liability at the end of the PCRA? Is that your position? No, Your Honor. It cannot be that it was constitutional at the beginning, and then at the end you can go back to liability. Do I ever have to return the property? No, absolutely you do, Your Honor. If there is insufficient procedural due process. Let's say there's sufficient procedural due process. Okay. Criminal case is over. Okay, you gave complete procedural due process up front. You took it. Can you keep it in the evidence locker forever? I think at a certain point it becomes unreasonable. Well, how about the point when no PCRA petition's been filed? You have to wait for kind of a statute of limitations on the PCRA provision, in which case we're letting a statute of limitations on habeas review or civil collateral proceeding drive our taking search proofs? I think, Your Honor, the best entity to make that determination is the criminal trial court. And they could make that determination way, way, way before that point in time. They could make that determination as soon as the notice of appeals filed, too. Absolutely. Absolutely. And if this was a situation where my friend filed a Rule 588 and the trial court said, you're absolutely right, this is not evidence, you must give it back, and the DA said, okay, give it back, and my client said, no, we're not going to give it back, and we had no basis, it's not contraband, then absolutely you could potentially have a 14th Amendment case in that. So let me just ask this question. If the PCRA petition gets dropped, right, I don't think there's any likelihood that that's going to happen, but if it gets dropped, then you would return the weapons, right? No, Your Honor. If the PCRA action, we are holding these weapons because the district attorney's office has requested us to hold the weapons. But you make a free choice on that. There's not a chain of command where the district attorney's office has control over the Pennsylvania State Police, is there? Do you have to follow his command? Generally, no, but I'm pretty sure. I do not know this. It's a request, not a command is what I'm getting at. No, we are beyond my preparation, unfortunately, but I'm pretty sure that if we decided to empty our evidence lockers without any kind of feedback from the DA's office, we'd be in violation of something. So, but I guess my question is this. If the PCRA petition were dropped, you'd return the guns, right? And you said no. If the PCRA petition was dropped and the DA's office says, you know, we don't think this is evidence anymore, absolutely we'd return the guns. But why do they have to say we don't think this is evidence? Because, Your Honor, we are not prosecuting any future crimes, so we are allowing the firearms to be in the evidence lockers. So let me get this straight. And this is, these guns are going to be seized at the, what I'm hearing, the unlicensed discretion of the district attorney for however long the district attorney thinks that they could possibly be evidence? Absolutely not, Your Honor. Your Honor, there's a court that has reviewed it and said that it can continue to be retained. But ultimately, the Pennsylvania State Police is immune under the 11th Amendment, so. The court has any other questions? Thank you. Thank you. Mr. Parkins, you reserve five minutes. Yes, Your Honor. And I would just note on that very last statement that was made in regards to the immunity, we did sue John Doe defendants who are members of the state police so that we can identify in discovery who was actually holding the firearms and amend to add individuals, just so that's clear. But one thing I also want to be clear on, while they claim this is a temporary seizure, it is not. It's indefinite, and quite frankly, practically, it's permanent. And Your Honor saw that when you just asked if they're going to give them back if the PCR is withdrawn, and they couldn't tell you yes. Because the fact of the matter is, this is a death penalty case. PCR L-1, God knows how long, federal habeas relief, same thing. In Pennsylvania, we have inmates on death row. We don't actually kill anybody anymore, so they remain on death row. And the appeals go on and on and on and on. So until Eric Frayn is dead, the appeals are not going to stop, and they're never going to give these weapons back. And the assertion that they're holding it to use it in a future trial when it has no evidentiary value is simply not true. And what's going on in that county, it's a small town. This was a horrendous event. A man did an unspeakable thing. It made national news, and it was terrible. And rightfully so, it inflamed everybody. But the fact of the matter is, these people are being punished because they are the parents of that man, and their lawfully owned property has been stripped of them as punishment for spying Eric Frayn. That's what's going on. These reasons are just not reasons. They're pretexts. And they are never going to give them back unless the federal courts intervene and tell them that the Constitution requires them to do so. Opposing counsel said, you know, I haven't seen cases that have done this in the past. And I think there's a reason for that. I think generally the government's actions are more reasonable. This is a very egregious case where the government refuses to return a great sum of lawfully owned property, in this case guns, which have a special constitutional protection other than ordinary property, under the Second Amendment. It's egregious. And the reason we haven't seen this or seen cases address it is probably because this doesn't happen. And it should be remedied in this case. This court in the Marzarella case, when it looked at the two factors and the obliterated firearms, the court actually didn't reach the question of whether banning obliterated firearms implicates the Second Amendment. They said that could actually be a burden on the Second Amendment, but we're not going to address that because we can answer it on scrutiny grounds because the law is reasonable, right? So if it's potentially a Second Amendment concern to ban an obliterated firearm, they're arguing in this case where we take people's entire collection of firearms from their home, that that's not a burden. That is certainly a burden on the Second Amendment. It contains two rights, as Your Honor said, the right to bear arms, the right to keep arms. And when Justice Scalia looked at the history of that phrase to keep, it has special significance in the home. And what is the legal, what is the definition at the time? To retain, to not lose, to hold. So what does the phrase to keep arms, as used in the Second Amendment, mean? At its core, it means the right to keep, to lose, to not lose, to retain guns in your home. That's what it means. And that's what these people are being deprived of with absolutely no good faith reason. Your Honor asks, what is the reason? Why might these be used at trial in the future? There's no tenable connection that would ever render these weapons usable in a future trial, none. And that's why they couldn't answer that question. And based on all the foregoing, I would ask that you grant our appeal. We thank both counsel for their arguments. We'll take them at our advisement. I'd ask that the parties work together to prepare a transcript and split the cost. The court will also issue an order shortly after argument to specify what additional letter briefing we might like from one or more.